IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALFONSO FREEMAN,  )
        Plaintiff,  )
  )
vs  )  Civil Action No. 15-1102
  )
MEGAN J. BRENNAN, UNITED STATES  )  Magistrate Judge Mitchell
POSTMASTER GENERAL,  )
        Defendant.  )

MEMORANDUM OPINION AND ORDER

Plaintiff, Alfonso Freeman, has filed an Amended Complaint against Defendant, Megan J. Brennan, United States Postmaster General, alleging claims of racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Title VII), and state law arising out of his termination, effective June 22, 2014, from his position as a Motor Vehicle Operator with the United States Postal Service (Postal Service).

Currently pending before the Court is a motion to dismiss the Amended Complaint, filed by Defendant pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff has filed a brief in opposition and Defendant has filed a reply brief. For the reasons that follow, the motion will be granted with respect to Plaintiff's claim arising under the Veterans' Preference Act and denied in all other respects.

Facts

Plaintiff is an African American male who on approximately February 4, 2013, began his employment as a Motor Vehicle Operator with the Postal Service at the facility located at 1001 California Avenue. (Am. Compl. ¶ 5.)[1] On May 13, 2014, Plaintiff was involved in a motor vehicle accident, his third in two years. He states that the Postal Service vehicle he was

---

[1] ECF No. 10.

operating tapped the bumper of the car in front of him, with no apparent damage, due to a failure of the air braking system (brake tensioner) on the vehicle. Plaintiff admitted that he was in bumper-to-bumper traffic when, because of the failure of the air braking system, the Postal Service truck he was driving tapped the vehicle in front of him. Plaintiff was alleged to have been checking his schedule because the Postal Service dispatch called him and advised him to pick mail from a location outside of his regular territory and he was checking his schedule for the time constraints. He notes that there is no policy that the drivers must pull over when notified by dispatch and that, had dispatch not called and placed additional work on him while in transit that was outside of his regularly scheduled pick-ups and deliveries, there would have been no need for him to be required to refer to his schedule. He was never advised that a claim was made for any damage and the Postal Service never alleged that any damage occurred. (Am. Compl. ¶¶ 56-62.)

Plaintiff received a letter dated May 20, 2014, which notified him that he was being removed from the Postal Service effective June 22, 2014. (Am. Compl. ¶ 6 & Ex. 1.) He notes that this letter made reference to two prior incidents, neither of which (he alleges) was an at-fault accident. (Am. Compl. ¶¶ 63-64.)

He filed a Step 1 Grievance, which was denied by the Postal Service on June 5, 2014. (Def.'s Br. Support Mot. Dismiss Ex. A.)[2] On June 13, 2014, a Step 2 Grievance Appeal Form was filed on Plaintiff's behalf by the American Postal Workers Union, AFL-CIO, ("Union"). (Am. Compl. ¶ 7 & Ex. 2.) It was the Union's position that he was charged with being in a motor vehicle accident on May 13, 2014 and that the discipline lacked just cause and was punitive in nature rather than corrective. (Am. Compl. ¶ 8 & Ex. 3.) It was the Postal Service Management

---

[2] ECF No. 16.

2

position that he was terminated for his inability to perform the required duties of his position. Specifically, Plaintiff failed to operate his vehicle in a safe manner. (Am. Compl. ¶ 9 & Ex. 3.) By letter dated July 22, 2014, the grievance was denied. (Am. Compl. ¶ 10 & Ex. 3.)

On August 1, 2014, the Union filed an appeal to arbitration on Plaintiff's behalf pursuant to Article 15, section 2 step 2(h) of the Collective Bargaining Agreement ("CBA"). (Am. Compl. ¶ 12 & Ex. 4.) Because it was unable to resolve the matter, the Union filed a direct appeal to arbitration on September 4, 2014. (Am. Compl. ¶ 13 & Ex. 5.)

By letter dated February 9, 2015, Plaintiff was notified that the grievance was scheduled for a hearing on February 26, 2015. (Am. Compl. ¶ 14 & Ex. 6.) On approximately February 25, 2015, Plaintiff was contacted by an official from his Union and notified that his grievance (No. 14-1392) was being withdrawn from the arbitration hearing scheduled for February 26, 2015. (Am. Compl. ¶ 15.) The withdrawal was based on a settlement agreement reached between the Union and the Postal Service, in which Plaintiff would be compensated in the amount of $2,355.00, minus standard deductions, for pay in lieu of the work hours during the 30 days prior to removal. The agreement also provided that Plaintiff would be given 30 days in which to resign, rather than suffer a removal, and that if he did so, the removal would be expunged from his record. (Pl.'s Br. Opp'n Ex. 3 at 3-4.)[3]

Plaintiff asserts that he did not receive any written notification or reason as to why the grievance was withdrawn or why the Union felt it could not win his arbitration. (Am. Compl. ¶¶ 16-17.) Plaintiff never consented to the withdrawal of his grievance; but Charles Pugar, the President of the Union, and Michael Kulikowski, Representative of the Postal Service, agreed to withdraw the grievance without consulting him. (Am. Compl. ¶¶ 18-19.)

---

[3] ECF No. 22.

He also notes that he was never advised of his rights under the Veterans' Preference Act nor advised of the Veterans' Preference provision pursuant to Article 16, Section 16.07 of the CBA. (Am. Compl. ¶¶ 20-21 & Ex. 11 at 37 § 16.07.) Plaintiff indicates that he entered the Marine Corps, on June 22, 1979. (Am. Compl. ¶ 22.) He was a Gasoline Diesel Mechanic or M.O.S. and was stationed at the Marine Corp Airstation at Cherry Point, North Carolina. (Am. Compl. ¶ 23.) Plaintiff earned the rank of E3, Lance Corporal. (Am. Compl. ¶ 24.) Plaintiff's service ended in September, 1983 and he was honorably discharged from the Marine Corp. (Am. Compl. ¶ 25.)

On March 23, 2015, with the assistance of his attorney, Plaintiff contacted an EEO counselor and prepared an "Information for Pre-Complaint Counseling." (Am. Compl. ¶ 26; ECF No. 22 Ex. 4.) On May 5, 2015, Plaintiff filed a charge of discrimination with the Pennsylvania Human Relations Commission ("PHRC"), which was dual filed with the Equal Employment Opportunity Commission ("EEOC"). (Am. Compl. ¶ 27 & Ex. 7.) By letter dated June 19, 2015, Plaintiff was notified of his right to file a formal EEO complaint, which he did. (Am. Compl. ¶ 28; ECF No. 16 Ex. D at EEO 00021; Ex. E at 009.) Plaintiff notes that he did not receive the letter until June 25, 2015. (ECF No. 22 Ex. 1, USPS Tracking Signature Confirmation.) On July 6, 2015, within fifteen (15) days of receipt of the notice, Plaintiff timely filed a counseled formal EEO complaint. (Am. Compl. ¶ 29; ECF No. 16 Ex. E at EEO 00009-00012.) On August 5, 2015, the formal EEO complaint was dismissed. (Am. Compl. ¶ 30; ECF No. 16 Ex. F at EEO00001-00003.)

Plaintiff was advised that the proper forum for a complainant to have raised a challenge to decisions made by the Union was through the grievance process itself or before the National Labor Relations Board ("NLRB"). (Am. Compl. ¶ 31; ECF No. 16 Ex. F at EEO 00001-00003.)

On August 11, 2015, Plaintiff filed a Complaint with the NLRB and notified both the Union and the Postal Service. (Am. Compl. ¶ 32 & Ex. 8.) On August 13, 2015, he filed a revised Complaint with the NLRB. (Am. Compl. ¶ 33 & Ex. 9.) The August 5, 2015 Notice of Dismissal also advised Plaintiff that he had a right to file a civil action in federal court in lieu of filing an appeal with the EEOC. (ECF No. 16 Ex. F at EEO00001-00003.) He filed this action on August 24, 2015.

Prior Accidents

On March 21, 2013, Plaintiff nudged a pole in the Blawnox Lot. He states that this occurred because of low lighting in the lot; that the deficiency in lighting was taken care of and the lot was properly lit; and that no disciplinary action resulted from this incident (he received additional training). (Am. Compl. ¶¶ 45-46.)

On March 13, 2014, Plaintiff was stopped at a red light and conversed with a pedestrian who was waiting at the intersection. After the conversation ended, Plaintiff looked up and saw the light was green, so he proceeded into the intersection. His vehicle was struck by another vehicle which was attempting to go around him. On April 14, 2014, the Postal Service issued him a letter of warning, in which Transportation Operations Supervisor Glenn Ramsey stated that he:

> failed to check that it was safe for you to proceed into the intersection and as a result [you] were hit by a car that was attempting to go around you. You failed to verify that it was safe to pull out into traffic. By failing to perform your duties in a safe manner, you were responsible for an accident that could have been prevented.

(Am. Compl. Ex. 10.) Plaintiff refused to sign this letter or warning. Plaintiff argues that Ramsey's representations were false, because the statement itself indicates that Plaintiff looked up and saw the light was green and also because he later learned that Mr. Ramsey had ignored

his supervisor's notes, that is, the person who took Plaintiff's statement clearly noted that he had checked his mirrors and surroundings before moving his vehicle forward. (Am. Compl. ¶¶ 47-55.) He filed a grievance on April 16, 2014 and on April 23, 2014, the grievance was resolved to a "one year LOW" from the date of the incident; that is, he was required to go one year from March 13, 2014 without another at-fault accident. (ECF No. 22 Ex. 2.) He also received additional training. (Compl. Ex. 1.)

Procedural History

Plaintiff filed this action on August 24, 2015, naming both the Postal Service and the Union as defendants (ECF No. 1). On October 26, 2015, the Postal Service filed a Motion to Dismiss. (ECF No. 4.) On November 11, 2015, Plaintiff voluntarily dismissed the Union from this case (ECF No. 9) and filed an Amended Complaint against the Postal Service, now the only defendant. (ECF No. 10.) Federal question jurisdiction is based on the civil rights claim. Count I alleges that the Postal Service treated him in a discriminatory manner in violation of Title VII when it terminated his employment for the May 13, 2014 motor vehicle accident, because similarly situated white employees were re-employed and/or re-hired at the same or similar pay position. He also alleges that the Postal Service falsely treated his two prior accidents as at-fault incidents in order to justify his termination; that the withdrawal of his grievance by the Postal Service and the Union was discriminatory as it deprived him of the right to have his grievance resolved; and that he was not advised of his Veterans' Preference rights. Count II alleges that the Postal Service breached the CBA by imposing discipline that was punitive in nature rather than corrective and that his removal was not for "just cause."

On December 4, 2015, the Postal Service filed a Motion to Dismiss the Amended Complaint. (ECF No. 15.) Plaintiff filed a brief in opposition on January 8, 2016 (ECF No. 22)

and on January 22, 2016, Defendant filed a reply brief (ECF No. 23).

Standard of Review

The Supreme Court has issued two decisions that pertain to the standard of review for failure to state a claim upon which relief could be granted. The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 679. The Court of Appeals has summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

The Court of Appeals has explained that: "In deciding a Rule 12(b)(6) motion, a court

7

must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted). Thus, the documents that Plaintiff has attached to the Amended Complaint (Exhibits 1-11), and the documents attached to Plaintiff's brief in opposition (Exhibits 1-4) may be considered in determining whether Plaintiff has stated a claim upon which relief may be granted. In addition, Defendant has attached a number of exhibits (A-F) to its motion to dismiss and Plaintiff has not objected to them; in fact, he has also cited them in his brief in opposition. Therefore, the Court can refer to all of these documents.[4]

Defendant argues that: 1) the claim that his removal was discriminatory was never raised during the administrative process and thus it is unexhausted; 2) Plaintiff cannot raise a Title VII claim against the Postal Service based on the Union's withdrawal of his grievance; 3) he cannot state a prima facie case of racial discrimination based on the Union's conduct and the fact that the comparators he cites were also terminated; 4) his state common law breach of contract claim is preempted by federal labor law; 5) he cannot state a hybrid claim because the Union did not breach its duty of fair representation by withdrawing a grievance under these circumstances (indeed, it actually settled his claim in exchange for money for him and the substitution of his

---

[4] Defendant also cites Rule 12(b)(1) and contends that it is making a factual attack upon subject matter jurisdiction. However, the Court of Appeals has held that "questions of whether a plaintiff has timely exhausted the administrative remedies in Title VII actions 'are in the nature of statutes of limitations. They do not affect the district court's subject matter jurisdiction.'" Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997) (quoting Hornsby v. United States Postal Serv., 787 F.2d 87, 89 (3d Cir. 1986)). The court concluded that "[t]imeliness of exhaustion requirements are best resolved under Rule 12(b)(6) covering motions to dismiss for failure to state a claim." Id. at 1022. However, once the inquiry extends beyond the pleadings, the court should apply the standard of a motion for summary judgment under Rule 56. Id. Because Plaintiff attaches documents to his Amended Complaint and reply brief and cites to documents that Defendant has attached to its motion to dismiss, the Court need not convert the motion to a motion for summary judgment.

resignation for a dismissal), and neither the Union nor the Postal Service has violated the CBA; and 6) he has no right to be notified under the Veterans' Preference Act because he was a craft employee and his Marine Corps service does not fall within the definition of a preference eligible employee.

Plaintiff responds that: 1) he has alleged that his removal by the Postal Service was discriminatory in that it was based upon a fabricated record and he could not challenge his dissatisfaction with the grievance process within the process itself when the grievance was withdrawn without his knowledge or consent; 2) he has alleged that the Union and the Postal Service entered into an agreement to deprive him of his right to arbitration; 3) he is not required to state a prima facie case of discrimination at this stage of the proceedings and he has alleged all that is necessary; and 4) he has explained why his breach of contract claims are not frivolous.

In a reply brief, Defendant reiterates that: 1) despite his protestations to the contrary, Plaintiff is making a collateral attack on the grievance process; 2) he has not responded to the arguments about preemption or the failure to state a claim based on the Union's discretionary decision to withdraw the grievance; and 3) he has not responded to the argument that he does not fall within the ambit of the Veterans' Preference Act.

<u>Count I: Title VII</u>

Title VII provides that "All personnel actions affecting employees or applicants for employment … in the United States Postal Service and the Postal Regulatory Commission … shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). The statute further provides that, within 90 days of the receipt of a final action taken by the EEOC, an aggrieved party may file a civil action as provided in section 2000e-5, § 2000e-16(c), and that the provisions of section 2000e-5(f) through (k) shall

govern these civil actions brought by federal employees, § 2000e-16(d).

Administrative exhaustion of remedies prior to bringing suit is required. Brown v. General Servs. Admin., 425 U.S. 820, 832-33 (1976); 29 C.F.R. § 1614.105(a)(1). Furthermore, "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Webb v. City of Philadelphia, 562 F.3d 256, 263 (3d Cir. 2009) (citation omitted).

Defendant argues that, in Plaintiff's pre-complaint information, he contended that he was discriminated against when the Union withdrew his claim, without his consent and without providing him an opportunity to represent himself, and that "similarly situated white employees" had their grievances heard and favorably resolved. (ECF No. 22 Ex. 4 at 1.) It contends that the same allegations were made in his formal EEO Complaint. (ECF No. 16 Ex. E.) It notes that, for this reason, the Agency dismissed his formal EEO Complaint: "A management inquiry was conducted. It was determined that the arbitration was withdrawn by the Union. In accordance with MD 11-29 C.F.R. Part 1614, an employee cannot use the EEO complaint process to lodge a collateral attack on another forum's proceeding." (ECF No. 16 Ex. D.) Similarly, in its decision dismissing Plaintiff's formal EEO Complaint, the Agency stated that:

> The proper forum for a complainant to have raised a challenge to decisions made by the [Union] is through the grievance process itself or before the [NLRB]. The Commission has long held that an employee cannot use the EEO complaint process to lodge a collateral attack on another forum's proceeding.
>
> Any decision to withdraw your grievance was made by the [Union] as the Agency does not have any authority to withdraw a grievance on your behalf. Your complaint is a collateral attack on the grievance process and is not properly before the EEOC. The proper forum for complainant to have raised his dissatisfaction with the outcome of the grievance process was within the negotiated grievance process itself. The claim is a collateral attack on the outcome of another administrative dispute resolution process; therefore, it fails to state a claim. See 29 C.F.R. § 1614.107(a)(1).

(ECF No. 16 Ex. F at EEO 002) (citations omitted).

Plaintiff responds that he alleged that his termination was based on a "fabricated record," and specifically notes that the Postal Service improperly used the March 13, 2014 accident as a basis to further justify his dismissal (when it stated that the May 13, 2014 accident was the third at-fault accident he had in two years). He contends that this violated Article 16.01(B) of the CBA (which states that employees' actions which are unsatisfactory but may be susceptible to correction short of formal discipline shall not be cited as an element of past record in any subsequent disciplinary action). He also argues that he is not making a collateral attack upon another administrative process because, unlike the situation in Brown, his administrative process had no outcome when the Union and the Postal Service agreed to terminate it.

Plaintiff cites Ilgenfritz v. Honorable Robert Gates, Secretary of Dep't of Defense, 2010 WL 2978090, at *5 (W.D. Pa. July 26, 2010) (Conti, J.), which discussed election of remedies pursuant to 5 U.S.C. § 7121(d). However, Defendant notes that the Postal Service is not an "agency" subject to the provision of Title 5. See 5 U.S.C. §§ 104, 105, 7101-35; 39 U.S.C. § 410(a).

Nevertheless, the record is not as clear-cut as Defendant portrays it. In the charge of discrimination, Plaintiff stated that "prior to filing my grievances, my supervisor would fabricate many allegations against me because I was black and [he] wanted to get rid of me. For instance, I was disciplined and blamed for an accident to my vehicle that I did not cause. On or about 5/22/2014, I was terminated from my employment." (Compl. Ex. 7.) Similar allegations were made in the pre-complaint information (ECF No. 22 Ex. 4) and his NLRB Complaint (Compl. Ex. 8 at 2). His formal EEO Complaint stated that:

11

> my removal was not undertaken according to the contract, as I was only provided eight (8) days of employment prior to being terminated, and this was one of the reasons for my grievance, together with [the] decision to remove me based upon fabricated record.
>
> The actions were discriminatory because my white supervisors used incidents I was involved in to fabricate and magnify the allegations against me. For instance, on one occasion a person attempted to drive around my vehicle, and that person struck my vehicle, and my supervisor tried to blame the incident on me when I did nothing wrong, as I had the right of way to proceed through the intersection. In another instance, my vehicle "tapped" the vehicle in front of me due to the air break [sic] system lack of proper maintenance; no damages, but written up in exaggerated manner.

(ECF No. 16 Ex. E at EEO 00011.)

A fair reading of Plaintiff's administrative filings includes the allegation that the Postal Service discriminated against him on the basis of his race by altering or exaggerating background events to justify his dismissal, as well as the allegation that the Union discriminated against him by withdrawing his grievance when it did not do so for similarly situated white Union members. The Court of Appeals has held that, "if the EEOC's investigation is unreasonably narrow or improperly conducted, the plaintiff should not be barred from his statutory right to a civil action." Hicks v. ABT Associates, Inc., 572 F.2d 960, 966 (3d Cir. 1978). Therefore, this argument is rejected.

On a related note, Defendant argues that Plaintiff cannot pursue a Title VII claim against the Postal Service based upon the withdrawal of his grievance by the Union. See Yee v. Bureau of Prisons, 2009 WL 528602, at *2 (N.D. Tex. Feb. 27, 2009) ("Plaintiff cannot challenge the arbitration, or any of the purported procedural flaws associated with it, through a Title VII action"); Brown v. Potter, 67 F. App'x 368, 369 (7th Cir. June 2, 2003) ("to the extent that Brown does request review of a decision by the Department of Labor to deny or allow workers' compensation, the district court of course was right to

note that such decisions are not subject to review by other federal agencies or the courts.") Although this argument can apply in appropriate cases, the record in this case allows for the inference, drawn in Plaintiff's favor as the non-moving party, that his claim is not based solely on the Union's withdrawal of his grievance, but also upon the Postal Service's actions which led to his dismissal, before the grievance was filed. Therefore, this case is distinguishable from those cited by Defendant and this argument is rejected.

Defendant argues that Plaintiff has failed to state a prima facie case of discrimination, citing to the familiar McDonnell Douglas burden shifting analysis. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). As the Court of Appeals has explained, a Title VII plaintiff :

> bears the initial burden of establishing a prima facie case by a preponderance of the evidence. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). When a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817. If the defendant meets this burden, the presumption of discriminatory action raised by the prima facie case is rebutted. Tex. Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff then must establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action. Id. at 253, 101 S.Ct. 1089; McDonnell Douglas, 411 U.S. at 804, 93 S.Ct. 1817.
>
> The existence of a prima facie case of employment discrimination is a question of law that must be decided by the Court. It requires a showing that: (1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817; Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 348 n. 1, 352, 356 (3d Cir. 1999). However, the prima facie test remains flexible and must be tailored to fit the specific context in which it is applied. Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996).

Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797-98 (3d Cir. 2003) (footnotes omitted)

However, the shifting-burden framework cited above is not applicable when a motion to

dismiss has been filed. Indeed, the Supreme Court has held that a plaintiff alleging a claim of employment discrimination need not plead "specific facts" establishing the elements of a prima facie case, as would be required in response to a motion for summary judgment or at trial. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002) (establishing a prima facie case is an "evidentiary standard, not a pleading requirement."). Thus, "an employment discrimination complaint need not include [specific facts establishing a prima facie case of discrimination under the framework of McDonnell Douglas] and instead must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Id. at 508. In Twombly, the Court cited Swierkiewicz without distinguishing it and rejected the plaintiffs' contention that it "ran counter" to Twombly's plausibility standard. 550 U.S. at 569-70. The Court of Appeals recently reiterated that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss." Connelly v. Lane Const. Corp., 809 F.3d 780, 788 (3d Cir. 2016). Thus, Plaintiff does not have to meet the McDonnell Douglas standard at this stage of the proceedings and he does not have to allege, much less prove, that the comparators he cites were similarly situated and treated more favorably. Therefore, this argument is rejected.

Veterans' Preference Act

Plaintiff also alleges that Defendant failed to notify him of his rights under the Veterans' Preference Act. Defendant contends that Plaintiff is apparently suggesting that he had a right to appeal to the Merit Systems Protection Board (MSPB), but that Plaintiff does not meet the criteria. Plaintiff has not responded to this argument.

Plaintiff cites a section of the CBA which states that: "A preference eligible is not hereunder deprived of whatever rights of appeal such employee may have under the Veterans'

14

Preference Act; however, if the employee initiates an appeal under the Veterans' Preference Act, the employee will be deemed to have waived further access to the grievance-arbitration procedure beyond Step 3 under the following circumstances…" (Compl. Ex. 11 at 37 § 16.07(A).) Thus, the CBA applies but does not define the term "preference eligible."

Defendant argues that, to be an employee with appeal rights to the MSPB, an appellant must satisfy the requirements of 5 U.S.C. § 7511; that craft employees of the Postal Service do not have MSPB rights unless they have veterans' preference, 5 U.S.C. §§ 7511(a)(1)(B), (b)(8); 39 U.S.C. § 1005(a); and that the definition of "preference eligible" is a "veteran," 5 U.S.C. § 2108(3)(A-B). The term "veteran" means an individual who:

> (A) served on active duty in the armed forces during a war, in a campaign or expedition for which a campaign badge has been authorized, or during the period beginning April 28, 1952, and ending July 1, 1955;
>
> (B) served on active duty as defined by section 101(21) of title 38 at any time in the armed forces for a period of more than 180 consecutive days any part of which occurred after January 31, 1955, and before October 15, 1976, not including service under section 12103(d) of title 10 pursuant to an enlistment in the Army National Guard or the Air National Guard or as a Reserve for service in the Army Reserve, Navy Reserve, Air Force Reserve, Marine Corps Reserve, or Coast Guard Reserve;
>
> (C) served on active duty as defined by section 101(21) of title 38 in the armed forces during the period beginning on August 2, 1990, and ending on January 2, 1992; or
>
> (D) served on active duty as defined by section 101(21) of title 38 at any time in the armed forces for a period of more than 180 consecutive days any part of which occurred during the period beginning on September 11, 2001, and ending on the date prescribed by Presidential proclamation or by law as the last date of Operation Iraqi Freedom;
>
> and, except as provided under section 2108a, who has been discharged or released from active duty in the armed forces under honorable conditions;

5 U.S.C. § 2108(1).

Plaintiff's dates of service, from June 22, 1979 to September 1983, do not fall within any

of the identified time periods in the statute and therefore he does not meet the definition of "preference eligible." See Blakemore v. U.S. Postal Serv., 53 M.S.P.R. 390, 393 (1992) (individual failed to demonstrate that he was preference eligible because he served on military duty in the armed forces in a campaign or expedition for which a campaign badge had been authorized).

Based upon the allegations of the Amended Complaint, Plaintiff's period of service did not fall within the definition of "preference eligible." Therefore, to the extent he alleges that he was denied the opportunity to utilize his veterans' preference, he cannot state a claim for relief and the motion to dismiss will be granted. In all other respects, the motion to dismiss Count I will be denied.

Count II: Breach of Contract Claim

In Count II, Plaintiff alleges that the Postal Service breached the CBA by imposing discipline that was punitive in nature rather than corrective and that his removal was not for "just cause." Defendant argues that any state common law breach of contract claim is preempted by federal labor law and that he fails to state a hybrid claim. Plaintiff responds that he has stated a claim. Defendant notes in its reply brief that he cites no authority and fails to address its arguments.

Federal Preemption

Under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, an employee may sue his employer for breach of a collective bargaining agreement. When the employer is the Postal Service, an analogous provision of the Postal Reorganization Act, 39 U.S.C. § 1208(b), applies, "which is identical to § 301 in all relevant respects." Bowen v. U.S. Postal Serv., 459 U.S. 212, 232 n.2 (1983) (White, J., concurring in part and dissenting in part).

16

The Supreme Court has held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985) (citation omitted). Plaintiff contends that the Postal Service and the Union violated the terms of the CBA, and thus his claim must be treated as a § 1208(b) "hybrid" claim.

Hybrid Claims

The Court of Appeals has explained that:

> Ordinarily, an employee files a claim against the union alleging breach of the duty of fair representation together with a claim against the employer alleging breach of the collective bargaining agreement in a "hybrid" section 301/duty of fair representation suit. In the "hybrid" suit, the plaintiff will have to prove that the employer breached the collective bargaining agreement in order to prevail on the breach of duty of fair representation claim against the union, and vice versa. See United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 66-67, 101 S.Ct. 1559, 1565–66, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring in the judgment). Thus, the claims are "inextricably interdependent." Id.; see also DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 164-65, 103 S.Ct. 2281, 2290-91, 76 L.Ed.2d 476 (1983).
>
> Nonetheless, the claims are not inseparable. A plaintiff who has a viable "hybrid" claim against both the employer and the union may opt to bring only the section 301 claim against the employer or the breach of duty of fair representation claim against the union. See DelCostello, 462 U.S. at 165, 103 S.Ct. at 2291. Either claim standing alone can be brought in federal court because each has an independent jurisdictional basis. Id.

Felice v. Sever, 985 F.2d 1221, 1226 (3d Cir. 1993).

Defendant argues that Plaintiff cannot state a claim under either requirement of a hybrid claim: he has not alleged that the Union breached its duty of fair representation under these circumstances and the Postal Service did not violate the terms of the CBA. Plaintiff disputes these contentions.

As the exclusive bargaining representative for its employees, the Union has a duty of fair

17

representation. DelCostello, 462 U.S. at 164-65. However, "the union typically has broad discretion in its decision whether and how to pursue an employee's grievance against an employer." Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 567-68 (1990) (citing Vaca v. Sipes, 386 U.S. 171, 177 (1967)). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca, 386 U.S. at 190. The Supreme Court has further held that "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953), as to be irrational." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991).

Defendant contends that the Union did not act irrationally when, having proceeded through two steps of a grievance and having received a detailed decision, it decided to withdraw Plaintiff's grievance challenging his third at-fault accident in less than two years. (ECF No. 16 at 21.) As explained above, however, the record is in dispute about these matters. Plaintiff has argued that the first accident resulted in no discipline but only additional training and that the second accident was falsely portrayed as his fault when it was not and the finding of an at-fault accident was reduced on April 23, 2014, but the Postal Service improperly continued to rely on the letter of warning dated April 14, 2014 with its finding of fault. In addition, Plaintiff has challenged Defendant's treatment of the withdrawal of the grievance as part of a settlement; he contends that he "received nothing; the stated compensation was what he was obligated to receive for his separation." (ECF No. 22 at 20.) These disputes cannot be resolved in the context of a motion to dismiss.

Similarly, Defendant argues that it did not violate any provision of the CBA: Section

16.01(A) states that "No employee may be disciplined or discharged except for just cause such as, but not limited … failure to perform work as requested … or failure to observe safety rules and regulations…" Defendant argues that, because Plaintiff failed to observe safety rules, his discipline was consistent with this section. But, as observed above, Plaintiff challenges whether he failed to observe safety rules on May 13, 2014 and he further challenges the Postal Service's reliance on the letter of warning concerning the second accident. Again, these disputes cannot be resolved at this stage of the proceedings. Therefore, with respect to Count II, the motion to dismiss will be denied.

    An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALFONSO FREEMAN,<br>    Plaintiff,<br><br>vs<br><br>MEGAN J. BRENNAN, UNITED STATES<br>POSTMASTER GENERAL,<br>    Defendant. | Civil Action No. 15-1102<br><br>Magistrate Judge Mitchell |

## ORDER

AND NOW, this 26th day of February, 2016, for reasons explained in the accompanying memorandum,

IT IS HEREBY ORDERED that the motion to dismiss filed on behalf of the Defendant (ECF No. 15) is granted with respect to Plaintiff's claims that he was not advised of his rights under the Veterans' Preference Act and denied in all other respects.

IT IS FURTHER ORDERED that Defendant file an answer to the Amended Complaint by March 10, 2016.

                                                  s/Robert C. Mitchell_____
                                                ROBERT C. MITCHELL
                                                United States Magistrate Judge