# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALFONSO FREEMAN,<br>　　　　Plaintiff,<br><br>vs<br><br>MEGAN J. BRENNAN, UNITED STATES<br>POSTMASTER GENERAL,<br>　　　　Defendant. | Civil Action No. 15-1102<br><br>Magistrate Judge Mitchell |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Defendant's motion for reconsideration (ECF No. 63) of this Court's Memorandum Opinion and Order (ECF No. 60) which granted in part and denied in part the motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (ECF No. 40), filed by Defendant Megan J. Brennan, United States Postmaster General, with respect to two claims brought by Plaintiff, Alfonso Freeman. The motion has been fully briefed. For the reasons that follow, the motion will be denied.

In Count I of his Amended Complaint, Plaintiff alleged a claim of racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Title VII), and in Count II, he alleged a hybrid claim under 39 U.S.C. § 1208(b) arising out of his termination, effective June 22, 2014, from his position as a Postal Support Employee (PSE) Motor Vehicle Operator (MVO) with the United States Postal Service (Postal Service). Plaintiff contended that the Postal Service discriminated against him on the basis of his race (African American) and that it breached the Collective Bargaining Agreement (CBA) between the Postal Service and the Union by relying upon an accident for which he received only counseling in terminating his employment while his Union breached its duty of fair representation by withdrawing his grievance. In the Memorandum Opinion and Order filed on March 27, 2017, the Court granted

Defendant's motion for summary judgment with respect to Count II of the Amended Complaint and denied it with respect to Count I. Defendant moves for reconsideration of the decision to deny summary judgment with respect to the racial discrimination claim in Count I.

Standard of Review

The Court of Appeals has stated that:

> "The purpose of a motion for reconsideration," we have held, "is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. See North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). "It is improper on a motion for reconsideration to ask the Court to rethink what [it] had already thought through rightly or wrongly." Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (internal citation and quotes omitted). In this case, Defendant cites no intervening change in the law or availability of new evidence, so the motion raises only a claim that the Court committed a "clear error of law or fact."

There is a split of opinion among district courts within the Third Circuit as to the appropriate standard of review of orders granting partial summary judgment, and some courts have accepted the broader standard that a court may permit reconsideration of such orders whenever "consonant with justice to do so." Qazizadeh v. Pinnacle Health Systems, 2016 WL 5787352, at *2 (M.D. Pa. Oct. 4, 2016). In this Court, most cases have cited the three factors from Max's Seafood Café and held that "a motion for reconsideration that "essentially restates, with added vigor, the arguments made previously" does not satisfy this "substantial standard."

Peerless Ins. Co. v. Pennsylvania Cyber Charter Sch., 19 F. Supp. 3d 635, 651 (W.D. Pa. 2014) (Hornak, J.) (citation omitted).

However, other cases have indicated that, when the order at issue is interlocutory (such as an order granting in part and denying in part a motion for summary judgment), the greater discretion of the applying "consonant with justice" standard applies. See Sampath v. Concurrent Tech. Corp., 2006 WL 2642417, at *2 (W.D. Pa. Sept. 13, 2006) (Gibson, J.); Square D Co. v. Scott Elec. Co., 2008 WL 4877990, at *1 (W.D. Pa. Nov. 12, 2008) (Fischer, J.) (same).

Nevertheless, even those courts that have applied the more lenient standard have held that "[w]hile a district court has the inherent power to reconsider an interlocutory order, '[c]ourts tend to grant motions for reconsideration sparingly and only upon the grounds traditionally available under Fed. R. Civ. P. 59(e).'" Morgan v. Hawthorne Homes, Inc., 2010 WL 1286949, at *2 (W.D. Pa. Mar. 31, 2010) (Cohill, J.) (quoting A & H Sportswear Co. v. Victoria's Secret Stores, Inc., 2001 WL 881718, at *1 (E.D. Pa. May 1, 2001)). See also Sampath, 2006 WL 2642417, at *2 (rejecting motion that merely restated some argument that had previously been rejected). Thus, under either standard, Defendant cannot obtain reconsideration by merely rearguing the merits of its motion for summary judgment. Yet that is what it is attempting to do.

In the motion for summary judgment, Defendant argued that Plaintiff was fired after he was involved in three motor vehicle accidents and that he could not compare himself to Richard Hipkiss, a white PSE, because Hipkiss actually received more severe treatment from the Postal Service—he was terminated after two accidents—and the fact that the Union was subsequently able to obtain Hipkiss's reinstatement through the grievance process has no bearing on the actions of his employer. (ECF No. 41 at 7-9.) In response, Plaintiff argued that he could not only compare himself to Hipkiss, but also to two other white Postal Service employees, John

3

McCartney and Charles McCloskey. (ECF No. 50 at 17-24.) In a reply brief, Defendant argued that McCartney (a PSE) and McCloskey (a full-time MVO) were also improper comparators. (ECF No. 54 at 2-4.)

The Court agreed with Defendant that Hipkiss was not similarly situated because he received more severe treatment than Plaintiff. The Court indicated, however, that McCartney's situation was more complicated and did not resolve whether he was a proper comparator.[1] Finally, with respect to McCloskey, the Court concluded that he was similarly situated: 1) like Plaintiff, he had three motor vehicle accidents; 2) Defendant's argument that McCloskey was a "full-time MVO with the full panoply of progressive discipline rights" unlike Plaintiff, who was a PSE, was not as clear-cut as Defendant maintained (and did not reflect the actual language of the agreements between the Postal Service and the Union); 3) Defendant's suggestion that the Union was responsible for McCloskey receiving more favorable treatment was not supported by the record; and 4) Defendant cited no authority to support its contention that two otherwise similarly situated employees could be further distinguished based on their positions within the Union or whether they are full-time or part-time employees.

Defendant continues to argue these points, supplementing its previous brief discussion with additional facts and six cases which purportedly support its contention that McCloskey and Plaintiff are not "similarly situated." Plaintiff responds that the Court has already properly held that McCloskey is similarly situated to him, and that the cases Defendant cites are distinguishable and do not hold as Defendant contends.

The Facts

Defendant notes that McCloskey's second accident occurred on November 2, 2011, for

---

[1] Thus, Defendant's statement that "the Court determined that neither PSE Hipkiss nor PSE McCartney was similarly situated to Plaintiff" (ECF No. 64 at 2) is inaccurate.

4

which he ultimately received a Letter of Warning (LOW). (ECF No. 51 Ex. 29 at USPS 120-22.) However, it argues that, pursuant to provisions of the CBA (ECF No. 42 Ex. C Arts. 16.3, 16.10), the discipline was effectively removed from his record two years later and thus when he had another accident on September 17, 2014 (more than two years later), the Postal Service could not refer to it and had to issue him an LOW for a "first offense." However, there is no evidence in the record that this is what actually transpired in McCloskey's case. Nor is the matter made clearer by Transportation Manager Anthony Battle's deposition statement that McCloskey's first two accidents "were subsequently downgraded by labor, so we have to start over in the process. He is a full-time employee." (Battle Dep. 95:12-15.)[2]

More importantly, Defendant continues to paraphrase the provision of the agreement applicable to PSEs. It contends that a full-time MVO (such as McCloskey) was entitled to the "full range of progressive discipline," i.e., an LOW for a first offense and increasingly severe discipline for succeeding offenses, (e.g., short suspension, long suspension, discharge); but "as a PSE, Plaintiff's termination was not subject to progressive discipline, and he could be terminated at any time so long as the action was supported by just cause." (ECF No. 64 at 4.)

However, the Memorandum of Understanding between the Union and the Postal Service actually states that:

> The full range of progressive discipline is not always required for PSEs; however, the parties agree that an appropriate element of just cause is that discipline be corrective in nature, rather than punitive.

(ECF No. 42 Ex. D.) See also Jones Dep. 15:10-11 ("the memorandum says that they are not always entitled to full range.")[3] Thus, it provides far more discretion to the Postal Service than Defendant acknowledges. Although Plaintiff was not "always" entitled to the full range of

---

[2] ECF No. 51 Ex. 20.
[3] ECF No. 42 Ex. E.

5

progressive discipline, Defendant has not proffered evidence that he was not entitled to it in his case or why.

With respect to the cases cited, they are highly fact-specific and distinguishable from this case. For example, in a case involving a mail handler, the Fifth Circuit stated that the plaintiff "has not explained how junior, part-time flexible mail handlers are similarly situated to him—a senior full-time mail handler." Fuqua v. Brennan, 645 F. App'x 519, 523 (5th Cir. 2016). But in this case, Plaintiff is far more similar to McCloskey and he indicates that he worked over forty hours per week performing the same duties and responsibilities, which Defendant has not disputed. And in Cassell v. Brennan, 2016 WL 6132342 (W.D. Ky. Oct. 19, 2016), another Postal Service case, the differentiating factor between the plaintiff and his proposed comparators was that he was a probationary employee and they were not. Moreover, as Plaintiff observes, the Cassell case actually held that non-probationary employees, including PSEs, are entitled to progressive discipline. Id. at *4. Thus, the Cassell case actually supports Plaintiff's argument that McCloskey is a proper comparator.

Defendant has not demonstrated that the Court committed a "clear error of fact" based upon facts which were not raised in the motion for summary judgment and which are far from clear. In addition, as Plaintiff has noted, there is something of an inconsistency even within Defendant's version of the facts: it continually states in its briefs that he had three prior accidents, but it acknowledges that his first accident resulted in no discipline and thus when he had an accident on May 13, 2014 (the one that resulted in his termination), it should have been considered his second accident. See ECF No. 42 Ex. P at BATTLE 105-06 (after his first accident, he received only a discussion); ECF No. 56 Ex. FF at 107, Art. 16.2 ("such discussion may not be cited as an element of prior adverse record in any subsequent disciplinary action

6

against an employee"); ECF No. 42 Ex. S (Notice of Removal, which "officially" referred only to his April 16, 2014 LOW after the second accident but also indicated that Plaintiff "admitted during your pre-disciplinary interview that you have had 2 prior accidents in two years.")

In addition, Defendant has not demonstrated that the Court committed a "clear error of law" by relying on cases that were not cited in the motion for summary judgment and which leave considerable room for doubt. "Whether a comparator is similarly situated is "usually a question for the fact-finder," and summary judgment is appropriate only when "no reasonable fact-finder could find that plaintiffs have met their burden on the issue." Coleman v. Donahoe, 667 F.3d 835, 846-47 (7th Cir. 2012) (citation omitted). The court "noted with some concern the tendency of judges in employment discrimination cases to require closer and closer comparability between the plaintiff and the members of the comparison group." Id. at 851-52 (citation omitted).

In the Coleman case, the Seventh Circuit held that the district court had too strictly applied the similarly situated inquiry. The district court held that Coleman (who was fired for having made a threat to harm her supervisor) could not compare herself to two other employees (Arient and Pelletier) who had held a knife to the throat of a black co-worker while holding him down because, inter alia, they had different job titles and duties than she did. But the Seventh Circuit noted that the case involved workers who were disciplined for violating a general workplace rule that applied to all employees in all departments and of all ranks (as opposed to discipline involving poor job performance):

> In such misconduct cases (as opposed to performance cases), comparisons between employees with different positions are more likely to be useful. See, e.g., Rodgers [v. White], 657 F.3d [511,] 513 [(7th Cir. 2011)] (where plaintiff was punished more harshly than his supervisor for the same misconduct, the "general rule" that "employees of differing ranks usually make poor comparators ... does not apply"). "[W]hen uneven discipline is the basis for a claim of discrimination,

7

> the most-relevant similarities are those between the employees' alleged misconduct, performance standards, and disciplining supervisor," rather than job description and duties. Id. at 518.
>
> The real issue is whether Arient and Pelletier were subject to the same standards of conduct as Coleman, and of course they were. The Postal Service rules against workplace violence and threats apply equally to mechanics and clerks. The employee handbook frames the prohibition in all-encompassing terms: "it is the unequivocal policy of the Postal Service that there must be no tolerance of violence or threats of violence *by anyone at any level* of the Postal Service. Similarly, there must be no tolerance of harassment, intimidation, threats, or bullying *by anyone at any level*." (Emphases added.) Since the purpose of the rule is to ensure a "safe and humane working environment," there is no objective reason for it to apply with greater or lesser force to employees of certain positions.
>
> Even if there might have been some theoretical basis for enforcing the rule differently based on job position, there is no evidence that the Postal Service actually took Arient's, Pelletier's, or Coleman's roles into account when it disciplined them. A proposed comparator's position or rank may be important, but only "*provided that the employer took these factors into account* when making the personnel decision in question." Eaton v. Indiana Dep't of Corrections, 657 F.3d 551, 559 (7th Cir. 2011) (emphasis in original), quoting Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002); see also Peirick v. Indiana University-Purdue University Indianapolis, 510 F.3d 681, 689 (7th Cir. 2007) ("we doubt that the [employer] took heed of employee classifications when doling out sanctions"). "A characteristic that distinguishes two employees, regardless of its significance when objectively considered, does not render the employees non-comparable if the employer never considered that characteristic ... [because it] cannot provide any insight as to whether the employer's decision as motivated by discriminatory intent." Eaton, 657 F.3d at 559. Here, the record provides no indication that the Postal Service considered job titles at all significant when deciding on discipline for Arient, Pelletier, and Coleman.

Id. at 849-50.

As in the Coleman case, Plaintiff was terminated for violating a general workplace rule (not driving safely), not based on the quality of his job performance. Thus, even if Plaintiff and McCloskey held different positions, comparison of the discipline they received is more likely to be useful. Moreover, Defendant has not demonstrated that the reason McCloskey and Plaintiff were treated differently is because of the difference in their job positions, that is, because

8

Plaintiff was a PSE and McCloskey a full-time MVO.  Although this may have been what occurred, the record does not resolve the issue and the Court cannot do so in the context of a motion for summary judgment, much less a motion for reconsideration.

      An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALFONSO FREEMAN,  )<br>          Plaintiff,  )<br>  )<br>vs  )<br>  )<br>MEGAN J. BRENNAN, UNITED STATES  )<br>POSTMASTER GENERAL,  )<br>          Defendant.  ) | Civil Action No. 15-1102<br><br>Magistrate Judge Mitchell |

## ORDER

AND NOW, this 1st day of May, 2017, for reasons explained in the accompanying memorandum,

IT IS HEREBY ORDERED that the motion for reconsideration filed on behalf of the Defendant (ECF No. 63) is denied.

                                                      s/Robert C. Mitchell_____
                                                    ROBERT C. MITCHELL
                                                    United States Magistrate Judge